USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/13/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSELYN CHIPANTIZA-SISALEMA,

                Petitioner,

-against-

LaDeon FRANCIS, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Kristi NOEM in her official capacity as Secretary of Homeland Security; Pam BONDI, in her official capacity as Attorney General,

                Respondents.

25 Civ. 5528 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Joselyn Chipantiza-Sisalema, a twenty-year-old high school student from Ecuador, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of her detention by Immigration and Customs Enforcement ("ICE"). *See generally* Am. Pet. (the "Petition"), ECF No. 6. She contends that, on June 24, ICE detained her at a Manhattan immigration court without an individualized assessment that she posed a flight risk or a danger to the community and, therefore, without due process. *See id.* ¶¶ 18, 30, 33, 36. She seeks immediate release from custody. *Id.* at 6 ¶ 5. For the reasons stated below, the Petition is GRANTED.

## BACKGROUND

    In 2022, Chipantiza-Sisalema's parents and brother fled Ecuador after they were "nearly killed" by individuals targeting the family. *Id.* ¶ 8. Chipantiza-Sisalema, who was sixteen years old at the time, took refuge at her grandparents' home in a different region of Ecuador. *Id.* Eventually, she too faced threats, so she also fled the country. *Id.* On May 7, 2024, officers with U.S. Customs and Border Protection encountered Chipantiza-Sisalema along the border near El Paso, Texas. Oh Decl. ¶ 4, ECF No. 9-1. She told them that she was a citizen and national of Ecuador and did not

have legal documents to enter the United States. *Id.* ¶ 5; *see* Petition at 1. The officers issued and served her with a Notice to Appear, the charging document that initiates removal proceedings, which charged her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled. Oh Decl. ¶ 6. The following day, the officers released Chipantiza-Sisalema on her own recognizance and she traveled to New York, where she now resides with her parents and brother and has enrolled in a local high school. *Id.* ¶ 7; Petition ¶ 10.

The Notice to Appear advised Chipantiza-Sisalema that she was to appear before an immigration judge at the immigration court at 26 Federal Plaza in Manhattan on June 24, 2025. Oh Decl. ¶ 6. On June 24, she appeared there *pro se* before an immigration judge. *Id.* ¶ 8. At the hearing, she requested additional time to obtain an attorney to represent her in connection with her asylum application. *Id.* The immigration judge granted the request and adjourned the hearing to March 24, 2026. *Id.* As Chipantiza-Sisalema left the hearing, "she was suddenly detained" by ICE officers inside the courthouse. *Id.*

She contends that ICE arrested her pursuant to an ICE policy that began on or about May 20, 2025, "to detain individuals immediately after their appearance in immigration court," without an individualized assessment of individuals' flight risk or dangerousness. Petition ¶¶ 17–18, 30. She claims that, pursuant to that policy, "she received neither notice nor an opportunity to be heard as to whether a change in custody status was warranted." *Id.* ¶ 33.

When ICE arrested Chipantiza-Sisalema, the officers took her to a holding room in the courthouse where she was confined for ten days. Chipantiza-Andagana Decl. ¶ 8, ECF No. 6-1. The conditions inside the holding room were "inhumane." Petition ¶ 21. ICE allowed her only three phone calls over the course of ten days, each lasting less than two minutes, and the agency prohibited her from having any contact with legal counsel. *Id.* ¶¶ 15, 21. ICE did not provide her with a change of clothing, and it did not offer her the opportunity to bathe or brush her teeth for the entirety of her

confinement in the holding room. *Id.* at 1; *id.* ¶¶ 12, 21. The holding room was overcrowded with detainees, who were not provided beds; Chipantiza-Sisalema was, therefore, forced to sleep on a crowded floor for more than nine days in an upright position. *Id.* ¶¶ 14, 20–21. She was "extremely hungry" due to inadequate food, and she was denied medical attention when she requested it. *Id.* ¶¶ 13–14, 21; *id.* at 1.

On July 2, ICE decided to transfer Chipantiza-Sisalema to the Richmond Correctional Center in Monroe, Louisiana. Oh Decl. ¶ 10. On July 3, Chipantiza-Sisalema filed a petition for a writ of habeas corpus in this District, alleging *inter alia* that ICE detained her in violation of due process and the Fourth Amendment; that ICE was holding her in inhumane conditions in violation of due process; and that ICE was denying her access to counsel in violation of due process, the First Amendment, the Administrative Procedure Act, and the Immigration and Nationality Act. *See* ECF No. 1.[1] Later that day, ICE transferred her to the jail in Louisiana, where she remains confined. *See* Oh Decl. ¶ 11.

On July 9, Chipantiza-Sisalema amended her petition, ECF No. 6, and, on July 11, Respondents filed their response, ECF No. 9.[2]

## DISCUSSION

Chipantiza-Sisalema contends that her detention violates her Fifth Amendment right to due process because ICE detained her without notice, an opportunity to respond, or an individualized determination that she poses a flight risk or a danger to the community. The Court agrees.

---

[1] Although the Petition concerned urgent claims and requested immediate relief, the Petition was not filed as an application for emergency relief pursuant to Rules 13.18 and 13.19 of the United States District Court for the Southern District of New York's ECF Rules and Instructions, and it was not labeled as an emergency habeas petition. Accordingly, the case was wheeled out in the ordinary course and the undersigned was not informed of the Petition until July 7, after Chipantiza-Sisalema had already been transferred. *See* July 7, 2025 ECF Entry "Case Opening Initial Assignment Notice." Respondents do not dispute that she filed the Petition while she was presently located in this District. Petition ¶ 1.

[2] By order dated July 10, the Court set this matter for a hearing on July 15. ECF No. 7. Having reviewed the Petition, the materials filed in support thereof, and Respondents' opposition and accompanying declaration, the Court finds that no material facts are in dispute, the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "Noncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Id.* "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.*

"These requirements take on particular significance when [the Court] consider[s] what actually happened to [Chipantiza-Sisalema]. [S]he was not 'detained'; [s]he was, in fact, incarcerated under conditions" that are substantially worse than "those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes. But in sharp contrast to them, the 'sum total of procedural protections afforded' to [Chipantiza-Sisalema] was far less." *Id.* at 850–51 (quoting *Boumediene v. Bush*, 553 U.S. 723, 783 (2008)).

"The Second Circuit has held that the *Mathews v. Eldridge*[, 424 U.S. 319 (1976),] balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez*, 978 F.3d at 851). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335).

Chipantiza-Sisalema does not contend that greater "judicial-type procedures must be imposed upon [the] administrative action[s]" of ICE than those already required by law; she argues that the agency must comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process. *Id.* at 851 (quoting *Mathews*, 424 U.S. at 348); *see*

4

Petition ¶¶ 12, 17–18, 26–28, 30, 33.  She argues—and Respondents do not dispute—that, if ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen to "demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); Petition ¶ 27; Resp. at 5 n.3, 6.  She claims that this did not happen in her case.  "[S]he was suddenly detained by Respondents" pursuant to a new ICE policy "to detain individuals immediately after their appearance in immigration court" without an individualized assessment, notice, or opportunity to be heard.  Petition ¶¶ 12, 17–18, 30, 33.  Respondents do not dispute any of these facts.  They merely state that, "[a]fter her hearing, ICE took Chipantiza-Sisalema into custody under INA § 236(a), 8 U.S.C. § 1226(a)."  Oh Decl. ¶ 8; Resp. at 3 ("After the hearing, ICE took Petitioner into custody without incident.").  Respondents do not explain why ICE detained her, and they offer no further facts regarding the circumstances of her arrest.  They neither contend that ICE made an individualized assessment that she should be detained, nor that it gave her notice of the detention or an opportunity to be heard.  They do not deny the existence of the new detention policy described in the Petition and its attachments.  And they do not argue that Chipantiza-Sisalema poses a risk of flight or a danger to the community.

The key facts are, therefore, undisputed: ICE summarily detained Chipantiza-Sisalema pursuant to an agency policy of arbitrary detention without affording her notice or opportunity to be heard.  There is no doubt that "Respondents' ongoing detention of [Chipantiza-Sisalema] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates [her] due process rights." *Valdez*, 2025 WL 1707737, at *4.  "In light of the deprivation of [her] liberty, formerly granted and approved by Respondents, the absence of any deliberative process prior to, or contemporaneous with, the deprivation, and the statutory and

5

constitutional rights implicated, a writ of habeas corpus is the only vehicle for relief. It is, in essence, the most appropriate remedy." *Lopez v. Sessions*, No. 18. Civ. 4189, 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018).

Despite the glaring constitutional violation, Respondents contend that the writ should not be granted. First, they contend that the Petition should be summarily denied for failure to exhaust administrative remedies. Resp. at 4. This argument is without merit. The very nature of the Petition, and the key fact that the Government does not dispute, is that Chipantiza-Sisalema was detained pursuant to an ICE policy that is defined by its systematic denial of the very administrative remedy Respondents urge her to avail herself of. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.) (as amended) (judicial exhaustion may be excused when "available remedies provide no genuine opportunity for adequate relief" or exhaustion "would be futile"). Respondents suggest that any constitutional violation could be cured if Chipantiza-Sisalema requested a custody redetermination hearing before an immigration judge. Resp. at 4, 9. Such hearings, however, are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain. 8 C.F.R. § 236.1(d). Such a hearing is no substitute for the requirement that ICE engage in a "deliberative process prior to, or contemporaneous with," the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause. *Lopez*, 2018 WL 2932726, at *15; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The suggestion that government agents may sweep up any person they wish, for any reason, and hold that person in the conditions in which Chipantiza-Sisalema was and is being held without consideration of dangerousness or flight risk so long as the person will, at some unknown point in time,[3] be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of

---

[3] Chipantiza-Sisalema's next scheduled appearance before an immigration judge is March 24, 2026. Respt. at 3 (citing Oh Decl. ¶ 7).

the Fifth Amendment, *Velasco Lopez*, 978 F.3d at 851–52; *Valdez*, 2025 WL 1707737, at *3–4.[4] Respondents' suggestion that Chipantiza-Sisalema has an adequate remedy available to her thus rings hollow. Moreover, courts may excuse administrative exhaustion where the petitioner "has raised a substantial constitutional question," *Beharry*, 329 F.3d at 62, as Chipantiza-Sisalema has here, *see Valdez*, 2025 WL 1707737, at *1 n.1. She is, therefore, appropriately excused from exhausting administrative remedies.

Second, Respondents emphasize that ICE has the statutory, discretionary authority to detain noncitizens like Chipantiza-Sisalema under 8 U.S.C. § 1226(a). But the question is whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is no dispute that it is. *Velasco-Lopez*, 978 F.3d at 850–51. Nor is there any dispute that it failed to do so here. Because "Respondents' ongoing detention of [Chipantiza-Sisalema] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates [her] due process right," *Valdez*, 2025 WL 1707737, at *4, her petition must be granted.[5]

## CONCLUSION

For the reasons stated above, Chipantiza-Sisalema's petition, ECF No. 6, is GRANTED. Respondents are ORDERED to immediately release her from custody.

By **July 14, 2025**, Respondents shall certify compliance with this Order by a filing on the docket.

SO ORDERED.

Dated: July 13, 2025
      New York, New York

                                              ANALISA TORRES
                                      United States District Judge

---

[4] There is also a dispute as to whether the immigration judge would even be authorized to grant Chipantiza-Sisalema a custody redetermination hearing if she requested one. *Compare* Petition ¶ 34, *with* Resp. at 9.

[5] Because the Court finds that Chipantiza-Sisalema is being held in violation of the Fifth Amendment and orders her release, it does not reach the other claims raised in the Petition.